Kurz, Respondent, v. Kurz, Appellant.

*No. 324. Submitted under sec. (Rule) 251.54 February 6, 1974.—*
*Decided March 18, 1974.*
(Also reported in 215 N. W. 2d 555.)

678

The cause was submitted for the appellant on the briefs of *Martha J. Bablitch* of Stevens Point, and for the respondent on the brief of *Glinski & Buzza* of Stevens Point.

ROBERT W. HANSEN, J. No appeal was taken and no challenge is now raised to the original divorce decree findings that: (1) Both plaintiff and defendant were not fit and proper persons to have custody of the minor child of the parties; (2) that the interests of such child demanded that custody be placed with its paternal grandparents; and (3) that care and custody of the child be awarded to the paternal grandparents.[1] As the trial

---

[1] *See:* Sec. 247.24, Stats., sub. (1), providing: "In rendering a judgment of annulment, divorce or legal separation, the court may make such further provisions therein as it deems just and reasonable concerning the care, custody, maintenance and education of the minor children of the parties, and give the care and custody of the children of such marriage to one of the parties to the

court noted in its opinion, "No serious claim is made by the defendant that the complete welfare of the child is not being met at the home of the paternal grandparents aided and assisted by the plaintiff. . . ." Defendant does not contend that the best interests of the child demand or would be served by a transfer of custody but rather, as the trial court phrased it, ". . . the main thrust of her argument seems to be that she has reformed and that this has created a change of circumstances which under the law should move the Court to grant custody . . . to her."

The trial court held that a divorced parent seeking a change of modification of a custody award in a divorce judgment must establish (1) a change of circumstances as to such divorced parent being unable to adequately care for the child or children, or not being a fit and proper person to have custody; and (2) that the best interests of the child would be promoted by the post-trial modification or change in the custody award. The contention of defendant-appellant is that the best interests of the child are not to be considered if a divorced parent, found unfit, subsequently establishes fitness. One statute and two cases are primarily involved in an analysis of this suggested fitness-only test.

*The statute.* As to postjudgment review of provisions in divorce judgments concerning the care and custody of minor children, the controlling statute provides that the court may modify or change a custody award in a divorce judgment "whenever the welfare of any such

---

action, or, if the interest of any such child demands it, and if the court finds either that the parents are unable to adequately care for any such child or are not fit and proper persons to have the care and custody thereof, may declare such child a dependent and give the care and custody of such child to a relative (as defined in ch. 48) of the child, a county agency specified in s. 48.56 (1), a licensed child welfare agency, or the department of health and social services. . . ."

child will be promoted thereby." [2]   Under this statute, the trial court was clearly correct in holding that one seeking revision of a divorce-judgment provision as to custody must establish that the welfare of the child involved will be promoted by the change or modification sought.  Unless this statute is struck down or removed from the statute books, it clearly requires that the best interests of the child be served by a subsequent modification of a proper and valid custody order included in a divorce judgment.

*The Dees Case.*  As to the burden of proof on the moving party in a postjudgment motion to modify a divorce decree provision as to custody of a minor child, the controlling case is *Dees.*[3]  In *Dees,* the plaintiff-mother brought a post-trial motion to transfer the custody of a minor child from the Walworth county social services department to her.  In the divorce judgment, by stipulation of the parties, custody of the child was awarded by the court on a temporary basis to the department.  The child was placed in the foster home of a local clergyman and his wife, with both parents given visitation rights.  At the time of trial, in *Dees,* the court had not found the plaintiff-mother "unfit" but only found that she was unable to "adequately care" for the child.  Citing sec. 247.24, Stats., this court found the distinction between unfitness and inability to care important only in ". . . jurisdictions where children are still treated as near-chattels in a comparing of respective rights of parents to custody . . . ." [4]  Even as to the initial de-

---

[2] Sec. 247.24, Stats., sub. (2), provides: "Whenever the welfare of any such child will be promoted thereby, the court granting such judgment shall always have the power to change the care and custody of any such child, either by giving it to or taking it from such parent, relative or agency . . . ."

[3] *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282.

[4] *Id.* at page 440.

termination at the divorce trial of entitlement to custody, this court, in *Dees,* said of the distinction: ". . . In this state, where the primary and controlling consideration is what will be best for the child it is not crucial because in this state the would-be custodian must establish not only fitness and ability to provide adequate care but also that his or her being awarded custody would be in the best interests of the child. . . ." [5]

The contention of defendant-appellant that her improved conduct for the one year elapsing since the divorce decree, ipso facto, entitles her to a transfer of custody is specifically negatived in *Dees.*[6] As to such automatic reward for good conduct, *Dees* states firmly that ". . . children are not to be given to a custody-seeking parent as a premium or reward for good conduct . . . ."[7] The trial court responsibility is spelled out to be: "In post-trial hearings as to custody, as well as at the time of trial, the trial court has the responsibility to determine what disposition and what conditions will best serve the interests of the children involved. . . ."[8] Clearly applicable here, as it was there, is the conclusion of *Dees* that: ". . . If the plaintiff-mother were to establish full and complete recovery from the disorders that have plagued her, that fact alone would not require nor justify, ipso facto, the transfer of custody to her. It would still be her responsibility to also establish that the future well-being of the child would be furthered by the change of custody. . . ."[9] That is the exact burden of proof specified by the trial

---

[5] *Id.* at page 440.

[6] *Id.* at page 442, this court stating: "The issues before the trial court are, however, not to be narrowed and limited to an inquiry as to the degree of recovery from mental and emotional disorders of the custody-seeking parent. . . ."

[7] *Id.* at page 442.

[8] *Id.* at page 442.

[9] *Id.* at page 443.

court, in the case before us, and, under *Dees,* properly so.

*The Ponsford Case.* The *Ponsford Case* [10] is the definitive case in this state on the burden of proof on a surviving parent, following the death of the spouse,, in seeking custody of a child or children of the marriage. In *Ponsford,* an action for custody under sec. 247.05 (4), Stats., [11] the trial court found the father a fit and proper person to have custody and able to adequately care for the child and, based upon such finding, awarded custody to the father who had returned from military service and remarried. This court affirmed the custody award. It is enough to distinguish *Ponsford* from the case before us to note that, in *Ponsford,* the trial court found the surviving parent to be a fit and proper person to have custody and found him able to adequately care for the child. This court affirmed that finding of fact. In the case before us the trial court did not find the defendant-appellant a fit and proper person to have custody, instead finding that ". . . the maladies from which she previously suffered, mentally, socially and emotionally will take a good deal longer than one year to cure or outgrow." This finding of fact we affirm. It follows that the defendant-appellant has not met the fitness-ability test prescribed in *Ponsford.*

As to the burden of proof applicable to a divorced parent seeking a review of a custody award contained in a divorce judgment, defendant-appellant cites *Ponsford* to support her contention that ". . . in a dispute between a natural parent and any other custodial party, the parent's right to custody is supreme unless he is found to be unfit or unable adequately to care for the children. . . ." The assumption is that *Ponsford* applies to

---

[10] *Ponsford v. Crute* (1972), 56 Wis. 2d 407, 202 N. W. 2d 5.

[11] Sec. 247.05 (4), Stats., provides: ". . . an independent action for custody may be commenced in any county of this state in which the child is present. . . ."

custody awards in divorce actions, and the conclusion is that *Ponsford* has by implication reversed or overruled *Dees,* even though it does not mention or refer to the *Dees* holding. But the assumption and the conclusion are in error. *Ponsford,* and earlier cases cited in defendant-appellant's brief [12] on the point involved, have the common denominator that none involve custody determinations in a divorce judgment, or subsequent motions for modification or change of such custody awards in a divorce judgment. It is as to marriages terminated by a decree of absolute divorce or sundered by a decree of legal separation, that the controlling statute [13] and *Dees* alike provide that where (1) the interest of any such child demands it, and (2) the parents are unable to adequately care for any such child or are not fit and proper persons to have the care and custody thereof, the trial court may give custody to ". . . a relative (as defined in ch. 48) of the child, a county agency specified in s. 48.56 (1), a licensed child welfare agency, or the department of health and social services. . . ." [14] The reason for the twofold burden of proof and the broadened alternatives for custody placement in divorce actions is not difficult to locate. In this state the impairment or dissolution of the marriage relation is declared by statute to involve more

[12] *Lacher v. Venus* (1922), 177 Wis. 558, 188 N. W. 613 (involving an adoption by foster parents of a child when the natural parents were unable to provide for it); *Guardianship of Bare* (1920), 170 Wis. 543, 174 N. W. 906 (involving a dispute between the natural mother of an illegitimate child and the family with whom the child had been living); *State ex rel. Doering v. Doering* (1954), 267 Wis. 12, 16, 64 N. W. 2d 240 (involving a habeas corpus proceeding by the natural mother of an illegitimate child against the maternal grandparents with whom the child had lived), this court stating: "Stella is the mother of this child. She is entitled to his custody unless the welfare of the child requires that he remain where he is. . . ."

[13] Sec. 247.24 (1), Stats.

[14] *Id.*

than the plaintiff and defendant in the divorce action.[15] It involves the public interest [16] and the rights and welfare of the children of the divorcing parties.[17] Such children are "always disadvantaged parties" [18] and in making or reviewing a custody award in a divorce judgment, it is the responsibility of the trial court, who does ". . . not function solely as an arbiter between two private parties, . . ." [19] to determine what provisions and terms in a custody award or custody order modification ". . . would best guarantee an opportunity for the children involved to grow to mature and responsible citizens, regardless of the desires of the respective parties. . . ." [20] So the trial court here held, correctly finding that the burden of proof upon a divorced party seeking change of a custody award in a divorce judgment to require (1) a showing that the divorced parent is a fit and proper person to have custody and able to adequately care for the child; and (2) a showing that

[15] Sec. 245.001, Stats., stating in part: ". . . The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned."

[16] *Id.* in pertinent part stating: ". . . The consequences of the marriage contract are more significant to society than those of other contracts, and the public interest must be taken into account always. . . ."

[17] *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 157, 138 N. W. 2d 185, stating that children ". . . are not to be buffeted around as mere chattels in a divorce controversy, but rather are to be treated as interested and affected parties whose welfare should be the prime concern of the court in its custody determinations."

[18] *Kritzik v. Kritzik* (1963), 21 Wis. 2d 442, 448, 124 N. W. 2d 581, also stating: "A material change in the circumstances of the parties [as to custody], while a necessary condition for modification, is not in itself sufficient. There *must also be a finding that meeting new needs would be in the best interests of the children.* . . ." (Emphasis supplied.)

[19] *Id.* at page 448.

[20] *Id.* at page 448.

the best interests of the child would be served by the proposed change or modification of the custody award. *Dees* states the burden of proof in custody determinations and reviews in divorce cases. *Ponsford* states the burden of proof where a surviving parent seeks child custody after the spouse has died. They do not collide because they travel different highways.

*By the Court.*—Order affirmed.